CITY OF JACKSON *v.* LANDRUM.

Mar. 16, 1953

No. 38706 24 Adv. S. 34 63 So. 2d 391

*W. T. Neely* and *E. W. Stennett,* for appellant.

*Landrum & Busby* and *Roger C. Landrum,* for appellees.

ROBERDS, P. J.

This is a condemnation proceeding by the municipality of Jackson, Mississippi, to obtain title to the north half of Lot 3, Square 9D, South Jackson, fronting on the west side of South Congress Street 40.35 feet and extending west a depth of 160.5 feet, and which is also known as No. 317 South Congress Street. The jury assessed the value of the lot and improvements thereon at $22,000. The City, on this appeal, says the verdict was so excessive as to the value that it is our duty to either order a remittitur here or reverse and remand the case for assessment of value by another jury. Excessive value vel non is the only question involved on this appeal.

On that question, it is shown, without dispute, that appellee, on October 12, 1950, after a trip to New Orleans, entered into a contract with Mr. George Miller, the owner, to purchase the property for the sum of $14,000. At the time the contract of sale and purchase was made appellee paid $500, and he agreed to, and did, pay $2,352 when the deed should be and was executed January 9, 1951, making a total cash payment of $2,852, of which $52 was part of the cost of legal services for title work and abstract of the property. He agreed to, and he did, on January 9, 1951, execute to Miller five promissory notes, one payable each year, bearing four percent interest per annum, and he also executed to Miller a trust deed on the purchased

property to secure payment of these notes. The papers included no prepayment rights and appellee testified he was bound to, and would, pay the full interest even though the property should be taken by condemnation.

The condemned property is located immediately west and across South Congress Street from the County Courthouse. It is also about two and a half blocks south of Capitol Street, which is the main street in said municipality. It is shown by all of the witnesses that construction of certain valuable buildings, very near the condemned property, were in contemplation, and some had actually been started, at the time of appellee's purchase, and some had actually been constructed when the case was tried in the county court in March 1951.

Condemnor introduced three witnesses, aside from appellee as an adverse witness. These three were engaged in the real estate business in Jackson. The first one introduced never did specifically state his estimate of the value of the property, although we think, and the jury could have found, that the fair import of his value was $14,000, the price appellee agreed to pay for the property. He handled the sale and purchase agreement between Miller and appellee. He admitted, however, that the property might be worth more at the time of institution of the condemnation proceedings than at the time Landrum made his contract of purchase—this largely because certain buildings, such as the County Welfare Building and Mississippi Title Insurance Company Building had been constructed next to or close by the condemned property since the Landrum contract was executed.

The next witness for the City estimated the value of the property at $14,000. He admitted, however, that he did not know of certain recent real estate transfers in the neighborhood of this property at prices justifying, by comparison, a much greater value than his estimate of $14,000.

The purport of the testimony of the third witness for the City was about the same as that of the second just stated.

Appellee introduced six witnesses besides himself. Three of these were lawyers in the City of Jackson. They were familiar with property values but were not engaged in the real estate business. Two of them said the property in question was desirably located, being just across the street from the County Courthouse, as well as the City Hall, and about two blocks from the Post Office and Federal Court Building, and that it would be especially valuable as rental property to lawyers were an office building constructed thereon, which, it is shown without contradiction, Mr. Landrum intended to erect when he bought the property. These witnesses did not name a specific money value for the property in question.

The other attorney had handled the legal phases of the sale from Miller to Landrum. He, as did the two witnesses just mentioned, thought the property very valuable, especially for an office building designed mainly for rent to lawyers, but he did not specify any amount. He knew of a lot close by, 80 by 160 feet, which shortly before then had sold for $70,000.

Two of the witnesses for defendant-appellee were engaged in the real estate business in Jackson. They were familiar, they said, with values in the neighborhood of the property in question, as well as the value of the specific property involved. One of them placed a specific value on the condemned property of $28,000 and the other at $30,000. They went into detail as to building activities, transfers and recent sales of properties in the immediate vicinity of the property in question.

Mr. Hugh J. Little was an employee of the City. He merely testified he knew of the plans of the City to construct a building on the corner of Pascagoula and South Congress Streets. He identified the building plans. This location is a short distance from the property condemned.

Mr. Landrum testified that he is an attorney in Jackson and has dealt considerably in the purchase and sale of real estate in Jackson and is familiar with land values in said City. He said Mr. Miller was a lawyer and resided in New Orleans; that he went to see Mr. Miller and considered he had bought the property at much less than its true value, especially as compared to its enhanced value at the time the condemnation proceedings were instituted. He explained that certain valuable buildings had been started, or completely finished next to, or in the immediate vicinity of, his property since he made a contract to purchase it in October 1950. He said sales, business and building activities, as well as values, had greatly increased since his purchase. He said he had purchased the property with the specific intent of constructing an office building for rental primarily to lawyers, it being close to the county and city court buildings, as well as the Post Office and Federal Court Building, and that it was the only property in that vicinity available for such use. He placed a value of $40,000 on the property. He said he had negotiated with the City in an effort to prevent condemnation of the property and on the stand offered, without objection, to pay the City $15,000 to stop the condemnation proceeding.

In addition to the testimony given, as above stated, by witnesses on the stand, the court and jury visited and viewed the premises.

Would we be justified in reversing the finding of the jury? The rule by which we are to test this question was stated by this Court in Mississippi State Highway Commission v. Williamson, 181 Miss. 399, 179 So. 736, in this language: "This Court has held time and again (so often it is useless to refer to the cases) that neither the trial court nor this court can substitute its judgment for that of the jury in awarding damages; that █ the verdict of the jury must stand unless it is plain that the verdict is so excessive as to have been brought about by passion

or prejudice—putting it differently, so excessive as to be shocking to the enlightened conscience." This was an eminent domain proceeding. Tested by that yardstick, we think it is evident, without going into detailed discussion of the evidence and reasons, that we would not be justified in setting aside the verdict of the jury in this case. That is especially true since the jury, as well as the county trial judge, went upon the premises, viewed and inspected the property and the surrounding conditions, and, after such inspection and return of verdict, the learned trial judge refused to set aside the verdict on motion of condemnor.

Affirmed.

*Hall, Lee, Holmes* and *Arrington, JJ.,* concur.