**CITY OF HOUSTON, Appellant,**

v.

**Max SCHORR, Appellee.**

No. 12832.

Court of Civil Appeals of Texas.

Galveston.

May 19, 1955.

Rehearing Denied June 16, 1955.

Will G. Sears, City Atty., Richard H. Burks and Robert L. Burns, Senior Asst. City Attys., Houston, for appellant.

Bracewell, Tunks, Reynolds & Patterson and Joe H. Reynolds, Houston, for appellee.

CODY, Justice.

This is the third appeal of a condemnation suit by the City of Houston of a storm sewer easement within its corporate limits, by which an open gully or bayou on appellee's property was replaced by a completely enclosed and covered-box sewer. The special commissioners awarded appellee $15. However upon the first trial, which was to a jury, appellee was awarded $3,000. City of Houston v. Schorr, Tex. Civ.App., 231 S.W.2d 740. Upon the second trial, which was also to a jury, appellee was awarded $2,000. City of Houston v. Schorr, Tex.Civ.App., 246 S.W.2d 246. Upon the third trial the jury found that appellee's land was improved and not damaged by the storm sewer, and there was no award. But this award was not permitted to stand as the trial court granted a new trial upon the motion filed therefor. Upon the present trial, which was to the court without a jury, the court awarded the principal sum of $1,250 to appellee for damage to his land. We have given the awards

to appellee upon the various trials merely as a part of the history of the case. They were not considered in connection with the former reversals, nor was the refusal to grant any award considered in connection with the granting of a new trial by the trial court.

In all the trials the basic issue between the parties was whether there had been a "damaging" of appellee's entire property by the taking of the right of way. There has never been any issue of compensation for a "taking" of the land itself.

Appellant predicates its present appeal upon three points, urging, (1) that the judgment must be reversed because the finding that the value of the Schorr property had been damaged in the amount of $1,250 is not supported by any competent evidence showing, or tending to show, the nature of the alleged damage, the effect upon various portions of the tract and its relationship to market value; and further, (2) because the finding of such damage is contrary to the overwhelming weight of the evidence in which the uncontrovertible physical facts show that the value of appellee's land has been benefited and not damaged; and, (3) because in rendering judgment for interest on the damages from December 19, 1949, to and including May 7, 1951, and from June 8, 1951, to and including December 17, 1952, the court erred. We overrule appellant's points.

Appellee's lot was bounded as follows: On the east by the center line of what is called in the record Country Club, or Slaughter Pen, Bayou, and sometimes called merely a gully; on the south by Polk Avenue, fronting thereon a distance of 60.5 feet; on the west by Elm Street for a distance of 205.5 feet; and its northerly boundary is formed by land belonging to someone else.

Prior to the installation of the box storm sewer, it is undisputed that only the westerly 35 feet frontage of the lot on Polk Avenue and about 80 feet frontage on Elm Street was at the street level with said streets, making approximately 35 feet by 80 feet which was at the street level. The remainder of the lot was within the banks of the bayou and presumably if there was a flood it would be subject to overflow. The appellant contends that before condemnation of the easement and the installation of the storm sewer only this 35 by 80 foot portion of the lot was usable. In that connection appellant introduced a map purporting to show a cross-section of the levels of the lot which lay within the banks of the bayou. The undisputed evidence did show that the two small frame buildings on the lot were located on the 35 by 80 foot portion of the lot which was at street level.

However, it was appellee's evidence that 55 to 58 feet fronting on Polk Avenue were usable and that a building could have been erected not only on the street level portion of the lot but also on the greater portion of the lot within the banks of the bayou. It was further the contention of appellee that by installing the storm sewer it became impractical to erect a building because the City had the right of ingress and egress for maintenance and the right to lay inlets into the sewer in virtue of Sec. 4, City of Houston Ordinance No. 9872, and this had the effect of reducing the market value of that property.

As opposing appellee's contention that any portion of the lot other than the 35 by 80 feet was usable, appellant seemed to consider that it had been the City's duty to refuse to grant any permit to build on any portion of the lot which was not at street level and this by force of Art. 7589a, Vernon's Ann.Tex.St. This statute makes it unlawful to divert or obstruct the natural flow of surface water, etc. There was no evidence in the record how the grading of the streets in the City of Houston in this neighborhood affected the flow of water in this bayou, but assuming that prior to the installation of the storm sewer the bayou only drained off the surface water in its natural state, we are not prepared to hold that appellant made out any case which would show that the City had any rights which it could invoke under the cited

statute to refuse the building permits any more than there was any evidence to the effect that any of the neighbors would have objected to the improving of the lot by the erection of a building partially within the banks of the bayou.

Appellant introduced evidence which showed that the storm sewer construction was of the most durable nature and would in all probability last with little maintenance, and that in such a way as not to interfere with plaintiff's use of his lot, for 40 or 50 years. Appellant further introduced evidence that it offered appellee a building permit authorizing appellee to build over the sewer and the evidence showed that the lot had been graded to street level as a result of the installation of the sewer. In a word, appellant's evidence would have authorized a finding that appellee's lot had been improved and not damaged by the installation of the sewer.

■ But the question here is whether after the trier of the facts had listened to the evidence and the witnesses and found that the property had been damaged to the extent of $1,250, there was sufficient evidence in the record to sustain such finding. The rule is well established that we must consider only the evidence most favorable to sustain the award. See Southwestern Gas & Electric Co. v. Anderson, Tex.Civ. App., 217 S.W.2d 47. The appellee qualified as an expert on real estate values in Houston. Without holding that it was necessary for appellee to be qualified as an expert to give an opinion as to the value of his lot immediately before and immediately after the condemnation, the fact remains that he did so qualify and gave it as his opinion that the property just before the condemnation was worth $9,500, and just afterwards, $3,500. There were other realtors who qualified as experts who gave testimony which amply justified the award of $1,250. It will not do to stigmatize these estimates of value as bald conclusions of the witness. All opinions of values depend for their acceptance probably more upon the faith the witness inspires rather than upon how well with reason he supports his conclusions. But be this as it may, the evidence was competent and if the values were not supported by good reasoning, they went to the weight and not the competence of the evidence. We must, therefore, hold that there was evidence to sustain the award.

■ Appellant, as noted above in its third point, contests the right of appellee to recover interest during the periods that the case was on appeal and on appeal because of reversible error committed by appellee and remained on appeal because of the failure of appellee to pay the costs and get the mandate back. We do not question that had appellee gotten a firm judgment on the first trial, appellant would have paid off the award and avoided paying interest during the time consumed by the succeeding trial. However the facts show that appellant got possession of the property upon paying the sum of $15 assessed by the commissioners, and has had such possession ever since. We believe that under the holding of the Supreme Court, 152 Tex. 122, 255 S.W.2d 184, affirming Housing Authority of City of Dallas v. Shambry, Tex.Civ.App., 252 S.W. 2d 963, the trial court correctly allowed the interest in question, and we order the judgment affirmed in all respects.

Affirmed.