TERRITORY OF HAWAII, BY RICHARD K. SHARP-
LESS, ITS ATTORNEY GENERAL *v.* IWALANI
BEMROSE ADELMEYER, ET AL., AND TERRI-
TORY OF HAWAII, BY RICHARD K. SHARPLESS,
ITS ATTORNEY GENERAL *v.* AMERICAN SE-
CURITY BANK, A HAWAIIAN CORPORATION,
ET AL.

No. 4172.

July 19, 1961.

TSUKIYAMA, C. J., CASSIDY, WIRTZ, JJ., CIRCUIT JUDGE
TASHIRO ASSIGNED BY REASON OF VACANCY AND
CIRCUIT JUDGE CROCKETT IN PLACE OF
LEWIS, J., DISQUALIFIED.

The State initiated two cases in the Circuit Court of the First Circuit seeking to condemn, pursuant to Chapter 8, R.L.H. 1955, certain properties belonging to defendants-appellees fronting on Nuuanu Avenue in Honolulu for a highway widening project. The defendants-appellees comprise Howard Carter Babbitt, Thomas and Ruth Richardson Guard, Clarence Yoshinori and Clarenore Yuriko Shimamura and family, Ethelinda Schaefer Castle and Henry Alexander and Una Craig Walker, and are hereinafter referred to as the landowners. In all instances, the State is acquiring a fraction of the landowners' land, the smallest parcel comprising 9,579 square feet, and leaving the remaining and larger portion untouched. By order of the trial court the cases were consolidated for trial before a jury.

Neither special benefits nor severance damages were claimed. The sole issue of fact was just compensation for the lands taken, to be measured on the basis of their market value. At the outset of the trial, the jury viewed the premises. In addition to four of the landowners, two appraisers testified on behalf of the State and three for the landowners. The testimony as to value was conflicting. The range was from $1.15 per square foot to $2.50 per square foot. The jury returned a verdict awarding compensation by valuing each of the parcels of land taken at $1.75 per square foot. Judgments were entered thereon, from which this appeal was taken.

The first of the two specifications of error claims that "[it] was error for the Court to deny the State's Motion to Strike the testimony of appraisers Collins, Miles and Kaneshiro."

George Collins was the first of three real estate appraisers called on by the landowners for expert testimony. Using the "before and after" method of valuation, he testified that, in his opinion, the Castle property taken

had a market value of $1.97 per square foot. Utilizing the same method, he placed a market value on the Walker property taken of $1.83 per square foot. His market value for the Babbitt and Guard parcels taken was $1.66 per square foot on a comparative basis with his findings as to the Walker property. Upon the conclusion of his testimony, the State moved to strike the "entire testimony on the basis that he has used improper methods plus being in contradiction to the Rodrigues case (referring to *Hawaii Housing Authority* v. *Rodrigues,* 43 Haw. 195, reh'g den. 43 Haw. 414)" which motion was denied.

The testimony of the other two appraisers was limited only to the value of the Shimamura property. Appraiser Kaneshiro expressed the opinion that this parcel had a market value of $2.15 per square foot, while appraiser Miles fixed the market value at $2.25 per square foot. At the conclusion of the testimony of Miles, the State moved to strike his testimony "and that of the previous witness on the same grounds that we moved to strike the testimony of Mr. Collins," which motion was likewise denied.

It is to be noted that the State, in its motion to strike, neither specified the "improper methods" nor pointed to any specific testimony of the witness as being improper. It is only by a careful scrutiny of the record in this case that we are able to obtain a glimpse of the "improper methods," other than the reference to the Rodrigues case, and even then none too clearly.

The sole issue here was the market value of the lands taken. All the witnesses addressed themselves to this issue, giving their opinions on market value. Their testimony was, accordingly, material and relevant. It is generally held that where the value of the property is material, any evidence which will aid the jury in fixing the fair market value of the property should be considered by them. Any competent evidence of matters, not merely

148

speculative, which would be considered by a prospective vendor or purchaser or which tend to enhance or depreciate the value of the property taken is admissible. 31 C.J.S., *Evidence*, § 182, p. 883; 30 C.J.S., *Eminent Domain*, § 430, p. 163. The only question, then, is one of competency of the witnesses and of their testimony.

It is universally held that "witnesses having the necessary qualifications may give their opinions as to the value of property." 5 Nichols, *Eminent Domain*, 3d ed., § 18.4[1], p. 135. No issue has been raised here as to the qualifications of these witnesses. Further, the question of competency is one for the trial court and on appeal will be reversed only on a showing of abuse of discretion. 18 Am. Jur., *Eminent Domain*, § 355, p. 1000; *Housing Authority of City of Little Rock* v. *Winston*, 226 Ark. 1037, 295 S.W. 2d 621; *Hickey* v. *United States*, 208 F. 2d 269 (3 Cir. 1953); *Trowbridge* v. *Abrasive Co. of Philadelphia*, 190 F. 2d 825 (3 Cir. 1951); *Paradise Prairie Land Co.* v. *United States*, 212 F. 2d 170 (5 Cir. 1954). "* * * The competency of a witness to give his opinion as to value is for the trial court. The extent of his knowledge of the subject matter goes to the weight rather than to the admissibility of his testimony. * * *" *Allen* v. *First Nat. Bank of Atlanta*, 169 F. 2d 221, 224 (5 Cir. 1948). Or, as one court has put it: "* * * It will not do to stigmatize these estimates of value as bald conclusions of the witness. All opinions of values depend for their acceptance probably more upon the faith the witness inspires rather than upon how well with reason he supports his conclusions. But be this as it may, the evidence was competent and if the values were not supported by good reasoning, they went to the weight and not the competence of the evidence. * * *" *City of Houston* v. *Schorr*, 279 S.W. 2d 957, 959 (Tex. Civ. App.).

In attacking the competency of the testimony of these

witnesses the State contends in its briefs, "that when only part of a land under single ownership is being condemned, the only acceptable method of arriving at just compensation is to value the whole first, then on that basis, assign a value to the part condemned." While it is not entirely clear from the record, we gather the State's contention to be, primarily, that the "before and after" method of valuation is the proper method to be used in this case and that any testimony of the value of the land taken was vulnerable as incompetent unless this method of valuation was utilized for the purpose of determining the value of the land taken.

The "before and after" method of valuation to determine the value of the part taken, namely, the difference in value of the entire tract before the taking and the value of the remainder after the taking, is one of several theories followed in cases of partial taking. 1 Orgel, *Valuation Under Eminent Domain*, 2d ed., §§ 48-65; 4 Nichols, *Eminent Domain*, 3d ed., § 14.23. The other methods follow the general formula of determining the value of the parcel taken and then separately assessing the damages and benefits, if any, to the remaining land. They all encompass the determination, in addition to the value of the part taken, of severance damages and benefits to the remaining land, usually a necessary concomitant of a partial taking. Theoretically, the "before and after" method is ideal as it is simple and complete. It includes in one lump sum the components of just compensation—value of the land taken plus severance damages to the remainder less special benefits arising out of the taking. All these elements of just compensation are inseparately moulded together in the result reached under the "before and after" method.

The methods of valuation devised for partial taking cases presuppose benefits or damages to the remainder.

See 1 Orgel, *Valuation Under Eminent Domain,* 2d ed., c. 4. Where, as here, there are no benefits or damages to the remainder, just compensation becomes the fair market value of the land taken. But as seen it is impossible to segregate the various items of value, damages and benefits in the result obtained through employment of the "before and after" method of valuation.

The ideal of the "before and after" method of valuation has given way to practicality in those jurisdictions, like Hawaii, which limit set off of special benefits to severance damages alone, in highway widening or realignment situations. R.L.H. 1955, § 8-21. " * * * [T]here can be no doubt that the tendency in recent years has been away from that principle and toward the adoption of the rule that the land taken, at least, must be paid for in money without consideration of benefits to the remaining land. * * *" See 3 Nichols, *Eminent Domain,* 3d ed., § 8.6206[1], p. 67.

"The only difficulty experienced in the practical application of the before and after rule has been with relation to the question of set-off of benefits. Obviously, determination of the value of the remainder area is based to some extent upon the benefits conferred upon it as a result of the use of the land taken for the project for which the condemnation was brought. The benefits may be of such magnitude that the consequential damages to the remainder area are completely cancelled out and an additional sum deducted from the market value of the land actually taken. In other words, the resulting award would be less than the value of the land taken standing alone. In those jurisdictions where set-off of benefits is allowed as against the value of the land taken there is no problem. However, in the great majority of jurisdictions such set-off is not permissible. * * *" 4 Nichols, *Eminent Domain,* 3d ed., § 14.232[1], pp. 336, 337.

Act 269, S.L.H. 1953, amended our statute dealing with the assessment of damages in eminent domain proceedings by adding thereto the following: "Provided; further, that in case said condemnation shall be for the purpose of widening or realigning any existing highway or other public road, the owner of the property condemned shall be entitled to full compensation for the property actually taken and special benefits shall be considered only in so far as the value of such benefits shall not exceed the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned and the construction of the improvements in the manner proposed by the plaintiff, i.e., if the special benefits shall be equal to such severance damages the owner of the parcel shall be allowed no compensation except the value of the portion taken but if the special benefits shall be less than such severance damages the former shall be deducted from the latter and the remainder shall be the only damages allowed in addition to the value of the land taken." This amendment was specifically intended to prevent the inherent inequities of the "before and after" rule in highway widening cases. *Cf.* Senate Journal, 1953, p. 780; House Journal, 1953, p. 637. The obvious legislative intent was to require separate assessments of the value of the part taken and damages and benefits to the remainder, if any. The "before and after" method of valuation precludes separate assessments of land value and damages and a concomitant consequence is the impossibility of setting off special benefits against severance damages alone as now required by R.L.H. 1955, § 8-21.

Nichols cites *Territory* v. *Honolulu Plantation Co.,* 34 Haw. 859, as supporting the "before and after" rule. 4 Nichols, *op. cit. supra,* § 14.23, n. 77. However, such support is by way of dictum only as the "before and

after" rule had no relevance to the decision. It is to be noted that even as dictum it has lost its effect in street widening cases, as R.L.H. 1935, § 63 (now R.L.H. 1955, § 8-21) is also cited in Nichols under the "value of part taken plus damages to remainder" rule. 4 Nichols, *op. cit. supra*, § 14.231, n. 83.

The State in now contending in its briefs, "that the part taken should be valued in relationship to the whole," seems to have broadened the base of the original ground for its motion to strike to extend this concept beyond the confines of the "before and after" rule. Be that as it may, here just compensation simply becomes the fair market value of the land taken.

In those jurisdictions where, in partial taking cases, the value of the parcel taken is determined apart from damages and benefits to the remaining land, the general rule is to determine this value by considering the part taken in its relationship to the entire tract of land before the taking. 1 Orgel, *Valuation Under Eminent Domain*, 2d ed., § 52, p. 236; 4 Nichols, *op. cit. supra*, § 14.231, p. 328. It is, however, not necessary here to value the part taken as a portion of the entire tract, as this rule is inextricably bound up with the determination of severance damages. 4 Nichols, *op. cit. supra*, § 14.1[3], p. 299. The State's contention that the part taken must be so valued states a principle which has no application here. "The courts, however, have not seen fit to be logical in this respect. While often uttering the doctrine that the strip that is taken should be appraised at its 'market value' or 'fair market value,' they have nullified their own words by insisting that the strip shall nevertheless be valued as a *part* of the entire tract." 1 Orgel, *op. cit. supra*, § 52, p. 237.

The rationale for the rule that the land taken must be valued as a portion of the tract of which it is a part

and not as if it were standing alone, is that the parcel taken, being generally of limited size or unusual shape, or both, and having no independent use, would have little or no economic value, unless considered in its relationship to the remainder of the tract. *Cf. Napa Union High School District* v. *Lewis,* 158 Cal. App. 2d 69, 322 P. 2d 39; *City of Los Angeles* v. *Allen,* 1 Cal. 2d 572, 36 P. 2d 611. In such cases, even where damages are waived, it is obvious that the parcel taken could have a value only when considered in relationship to the whole tract. But there the danger of unconsciously interjecting severance damages is ever present and must be guarded against. "This principle is predicated upon the obvious fact that the value of part of a tract is dependent upon its relationship to the remainder of the tract. Ordinarily this relationship gives it a greater value than the value inherent in it as a separate tract. By the same reasoning the value of the remainder is likewise enhanced by consideration of its relationship to the whole tract * * *." 4 Nichols, *op. cit. supra,* § 14.231, p. 329.

That the valuation of the part taken in relationship to the whole may be an erroneous and misleading principle is stated by the court in *Sorensen* v. *Cox,* 132 Conn. 583, 46 A. 2d 125 at 126 in the following language: " * * * The danger in determining the amount of damages by the method used by the referee here, that is, valuing the portion taken and adding to it the damages to the remaining land from the taking, is that the land taken may be valued as a portion of the whole, with consequential damage from the taking included, rather than as an independent entity, the result being a duplication of this element in the award. Orgel, Valuation under Eminent Domain, p. 218. This danger has been eliminated in the instant case by the referee's evaluation of the land taken as a separate and distinct piece of property. * * *"

Finally, in partial taking cases, no rigid rules can be prescribed. The facts and circumstances of each case must be considered to determine the applicable formula. As stated by the court in *Napa Union High School District* v. *Lewis, supra,* at 41:

> "The rules for determining value of land taken by condemnation cannot, from the nature of the case, be inflexible. In each case just compensation is the goal; and where rigid application of even a settled rule will produce injustice it must be departed from so far as made necessary by the circumstances of the case. * * *"

In other jurisdictions generally following the "before and after" rule of valuation such inflexibility has been countenanced. *Cf. Sorensen* v. *Cox, supra; Young* v. *Town of West Hartford,* 111 Conn. 27, 149 Atl. 205.

Again, in the case of *In re Bagley Avenue in City of Detroit,* 248 Mich. 1, 226 N.W. 688, 689, it was thus succinctly stated that:

> "Many technical rules have been promulgated for determining value, none of which are important. The determination of value is not a matter of formulas or artificial rules, but of sound judgment and discretion, based upon a consideration of all the relevant facts in a particular case. * * *" Quoted with approval in *City of Bismarck* v. *Casey,* 77 N.D. 295, 43 N.W. 2d 372, 377; *Wishek Investment Co.* v. *McIntosh County,* 77 N.D. 685, 45 N.W. 2d 417, 421.

Most of the partial taking cases applying the method of valuing the part taken in relation to the entire tract are those involving strips of land which had no real economic or market value standing alone. But where the part taken has an independent economic use with a market value and commanded a higher value as a separate entity, such value has been allowed. *Lazenby* v. *Arkansas*

*State Highway Commission,* Ark., 331 S.W. 2d 705; *Wishek Investment Co.* v. *McIntosh County, supra.*

The record here discloses that, except for Parcel 138 (driveway), the smallest of the parcels taken was just under 10,000 square feet in area, the minimum requirement for a houselot in that vicinity under zoning ordinances in force at the time of condemnation. Where, as here, the parcels taken approach such size and character as to assume proportions of independent economic use, in the light of the highest and best use of the land, the rationale of the rule of valuing "the whole first, then on that basis, assign a value to the part condemned" dissolves into meaninglessness. The method of valuation of the parcels taken, whether as a separate entity or in relationship to the whole tract, then becomes a matter of opinion of the appraisers to be weighed by the jury. *Cf. Lazenby* v. *Arkansas State Highway Commission, supra; Wishek Investment Co.* v. *McIntosh County, supra.* We conclude that in this case the use of either method of valuation by the expert witnesses was proper and their testimony admissible, subject only to the inherent risk of nonpersuasion.

The State's contention that the appraisal methods of the landowners' expert witnesses contravened the rule in *Hawaii Housing Authority* v. *Rodrigues, supra,* is without merit. In that case, the "so-called estimated profits" arising out of the mythical subdivision and sale of the property involved was proscribed. Nonetheless this court, at page 197, pointed out that "market value is not limited to the value for the use to which the land is actually devoted, but it may have a potential use value." And see *McCandless* v. *United States,* 298 U.S. 342; *United States* v. *Waterhouse,* 132 F. 2d 699, aff'd 321 U.S. 743. No more than that was done here by the expert witnesses in their testimony.

For the purpose of considering and disposing of this first specification of error, we have assumed that all of the testimony of the witness, George Collins, was being assailed under the motion to strike, especially as no objection had been made to the admission of any portion of it. However, even the State concedes that portions of his testimony were admissible by utilizing the same in its argument and briefs as constituting a limitation on the jury's verdict. We are unable to ascertain from the record where, in his opinion of the value of the parts taken, he failed to take into consideration their relationship to the entire tracts before the taking. So, as to this witness, the motion to strike was further inapplicable for the reason that the testimony sought to be stricken was not clearly indicated. *Cf. Southern Pac. R. Co.* v. *San Francisco Sav. Union,* 146 Cal. 290, 79 Pac. 961. It is fundamental that a motion to strike the testimony of a witness must be precise, definite and certain. *People* v. *Loop,* 127 Cal. App. 2d 786, 274 P. 2d 885. Also, a motion to strike the entire testimony of a witness is properly denied if any portion of the testimony is admissible. 53 Am. Jur., *Trial,* § 151, p. 137. "* * * the evidence moved to be stricken out should have been specially stated in detail, and a motion to strike out evidence of a witness generally must be overruled where there was other evidence given by that witness which was proper. * * *" *Kapuakela* v. *Iaea,* 10 Haw. 99, 105.

The second specification of error is that "the jury's verdict is contrary to the following instructions (referred to below) and the evidence." Despite the fact that our attention has been directed to quoted portions of the instructions, it is well-settled that the instructions must be considered as a whole. *Territory* v. *Aquino,* 43 Haw. 347; *Ciacci* v. *Woolley,* 33 Haw. 247. The jury in this case were so instructed. The question then presented under this re-

maining specification of error is whether or not the jury erroneously applied the instructions of law given to it by the trial court to the evidence presented.

No question is raised under this appeal challenging the instructions. Thus, the law as therein stated was the law of the case notwithstanding what may have been said earlier in this opinion.

The State points to a portion of the instructions that cautions the jury that "the Territory is not claiming any special benefits and the landowners are not claiming any damages to their remaining land because of the condemnation. Therefore, you are not to consider either special benefits or damages to such remaining land." The State further quotes from the instructions the following: "Where an entire tract of land before the taking is homogenous [*sic*] it must be treated as an entity and the part taken, with all improvements on it, must be valued as a portion of and therefore together with the entire tract." The State contends that the jury misapplied these excerpts of the instructions to the facts at hand.

It behooves us then to consider the instructions given by the trial court and their application to the evidence in the record. At the outset it should be noted that there was evidence showing that the entire tract was not strictly "homogeneous." Mr. Bolles regarded the parts taken, being frontage, as having a 20% increment in value. Mr. Collins referred to them as the "prime" portions and pointed out the difference in grade between the parts taken and the remaining lands, with the former being superior in that regard. Pictures showing the landscaping and contour of the portions taken were in evidence and the jury viewed the premises although construction of the new highway was then in progress.

The State concedes that, at least, a portion of Mr. Collins' testimony was admissible by arguing that his

testimony as to the Castle property before the taking was at the rate of $1.46 per square foot and constituted the maximum value that the jury could find. This result is based on the fact that Mr. Collins' after value of the remainder of this land as well as of the Walker land disclosed the presence of damages, and also that the testimony of the landowners as well as that of their other experts must be disregarded.

Although the State cites two cases from the same jurisdiction for the proposition that an owner's testimony of value alone, being a bare opinion unsupported by explanation or experience, cannot support a verdict, the great weight of authority is to the contrary. An owner, by virtue of his ownership and consequent familiarity with the land and real estate market, is generally held to be qualified to give his opinion as to the value of his land, the weight to be given such testimony being a question for the jury. 5 Nichols, *Eminent Domain*, 3d ed., § 18.4[2], pp. 137, 139; 1 Orgel, *Valuation Under Eminent Domain*, 2d ed., § 132, p. 564; *Lazenby* v. *Arkansas State Highway Commission, supra; Arkansas State High. Com'n* v. *Muswick Cigar & Bev. Co.,* Ark., 329 S.W. 2d 173; *Provo River Water Users' Ass'n* v. *Carlson,* 103 Utah 93, 133 P. 2d 777; *Telluride Power Co.* v. *Williams,* 164 F. 2d 685 (10 Cir. 1947). It is also significant, in considering this testimony of the landowners, that no objection was made to their testifying, nor was any motion to strike their testimony addressed to the trial court. The landowners, who testified in this case, gave opinions as to the value of the land taken from them ranging from $2.25 per square foot to $2.40 per square foot.

In addition to the testimony of the landowners the jury had the benefit of the opinions of five expert witnesses fixing the value of the land taken, ranging from $1.15 to $2.50 per square foot. Maps and photographs of the property were at the disposal of the jury.

The fallacy of the State's position is in seemingly contending that the jury were bound to accept one of these opinions to the exclusion of the others so as to preclude forming their own opinion of value. But the jury were instructed in this connection that opinion evidence is advisory only and that they were not bound by any of the opinions given although they could be considered as an aid to their own determination of value. They were instructed to "exercise [their] own judgment, based upon the law and all the evidence in this case."

Again, on the effect of their view of the premises, the jury were instructed:

"By order of this Court and with the consent of the parties, you went upon the land involved in this case and viewed it in order that you might better understand and apply the evidence from seeing the lay of the land, its location and character, in order to determine the relative weight to be given to conflicting testimony and to aid you in determining the market value of the land and in this connection you are instructed that you may resort to your own knowledge including what you have seen on your visit concerning the elements which affect the value and the amount of compensation to be paid. However, you should disregard changes in the land made by the government since it was taken."

And, also that:

"If you will recall at the beginning of the trial, you visited the properties involved in these cases. The object of such visit was in order that you might acquaint yourself with the physical conditions and characteristics and the nature and extent of the land so as to better enable you to understand the evidence on the trial of these cases and to assist you in interpreting and resolving differences in the evidence. The view

of the properties is not in itself evidence and you may not base your verdict upon that view but only upon the evidence taken in the Court in light of the view."

While there was evidence, both from the mouths of witnesses and from the photographic exhibits, as to the extent of the landscaping on the lands taken, only one expert witness, Mr. Kaneshiro, considered this in his testimony as to value. Nonetheless the jury were instructed that:

"If you find that any of the parcels of land condemned in this case at the date of taking had on them trees, plants and shrubbery and walls and gates which added to their value and were lost or destroyed as a result of the taking, you are entitled to take such facts into consideration in determining the value of the parcels of land taken."

Finally, on the question of just compensation the trial court charged the jury as follows:

"The just compensation which the owners are entitled to receive includes all elements of value that inhere in the property but it does not exceed the market value fairly determined. * * *"

Under the instructions given to the jury in this case, only the highlights of which are quoted above, it can be seen that the jury had considerable leeway in considering all the evidence without being limited to any one of the opinions of value given by the expert witnesses, either testifying on behalf of the State or on behalf of the landowners. They were instructed to consider all of the evidence, even that portion not considered by all the expert witnesses and to form their "own opinions upon a careful consideration of all the evidence in this case."

As to the method of valuation, they were instructed to use the "before and after" method followed by the quotation pointed out above by the State, in effect, to

value the part taken in relation to the whole. Of course, the application of the "before and after" method of valuation in a partial taking case where the non-existence of damages and benefits is predetermined as pointed out above is difficult to justify logically. To value the entire tract before the taking and reduce that value to a square footage price tag and then use that price tag to determine the value of the land remaining after the partial taking is to beg the question. It is only by considering the difference between the value of the entire tract before the taking and the value of the remainder after the taking through separate and independent valuations that the presence or absence and the extent of damages or benefits or both are determined.

Where the absence of damages and benefits is predetermined, the instructions of the trial court actually resolve down to valuation of the portion taken in its relationship to the whole tract. This, however, does not necessarily mean, as the State seemingly contends, that the portion taken carries with it a value based on the average square footage value of the entire tract. In a proceeding to condemn part of a tract of land, the rule that the part taken should be valued as part of the whole does not mean that it must be valued according to its proportional value of the whole by multiplying the number of square feet therein by the square foot value of the entire tract, as the phrase "as a part of the whole" does not mean average part of the whole, but that in assessing value to the part taken, the trier of facts must consider its value arising from its availability for use in conjunction with the part not taken, and any increased value inhering in the part taken as a part of the larger tract must be reflected in the award to the owners. *People* v. *Loop, supra.*

Nichols, a leading authority on the law of eminent domain, says: "In assessing the value of the land taken as

part of the entire tract it is not proper merely to compute the percentage value on the basis of an artificial average unit value for the entire tract unless the actualities of the case accord with such coverage value. It may be that the part taken is the most valuable part of the tract considered from a qualitative point of view. To attribute an average unit value thereto which is based in part on the lower value of the balance of the tract is inequitable to the owner in a double aspect of the situation. It attributes a value to the part taken which is lower than its actual value and it attributes a higher ultimate value to the remainder area than its actual value, thereby reducing his recovery as to both factors below his actual damages." 4 Nichols, *Eminent Domain*, 3d ed., § 14.231, p. 330. And in *Union Ry.* v. *Raine*, 114 Tenn. 569, 86 S.W. 857, 860, the court said: "[W]hen a small strip or portion of the land is involved, it ought to be valued at such a price, for the quantity taken, as the jury deemed it would be worth at that place and in that form, whether that be more or less than the price proven per acre for the whole tract."

Here, the jury in considering all of the evidence may well have found the parts taken to be more valuable because of their landscaping, grade or terrain and the like, than the average value per square foot of the entire tracts of land.

It is apparent from the verdict that the jury did not consider the testimony of Messrs. Kaneshiro and Miles very helpful. Nor were they unduly swayed by the obviously optimistic opinions of value expressed by the landowners. Nonetheless, they could still consider this testimony in conjunction with that of Messrs. Bolles, Lockhart and Collins and the evidence of the photographs and maps, as corroborated or aided by their view of the premises. They could "apply to this [their] own sound judgment

and good sense in arriving at the just compensation to be paid for the taking of this property in the light of all the evidence," as they were instructed to do. Their verdict was well within the range of testimony on value and was neither so grossly inadequate nor excessive as to show a misapplication of the instructions of law to the evidence at hand.

Experts' opinions vary and the competence, credibility and weight of their testimony is exclusively the province of the jury. As stated in *New York Cent. & H.R.R.C. Co. v. Newbold,* 166 App. Div. 193, 151 N.Y. Supp. 732 at 733: "There was a clash of rival experts, not an unusual feature in such proceedings. Assuming that the theory of damages acted upon was correct, if the commissioners had adopted the figures of the plaintiff's experts, they would have awarded much less; if the figures of the defendants' experts, much more. But it is perfectly well settled that the commissioners are not restricted to a choice between the estimates of warring experts, and are in no sense bound by their opinions. * * * Each side in such controversies is prone to retain witnesses most favorable to it, and very often such testimony is but lay advocacy under the guise of evidence. * * *"

Neither the trial nor appellate court can substitute its judgment for that of the jury in awarding just compensation in eminent domain proceedings, but the verdict must stand unless it is plain that it is so excessive as to have been brought about by passion or prejudice, or is so excessive as to be shocking to the enlightened conscience. *Mississippi State Highway Commission v. Williamson,* 181 Miss. 399, 179 So. 736; cited in *City of Jackson v. Landrum,* 217 Miss. 10, 63 So. 2d 391. *Cf. Vasconcellos v. Juarez,* 37 Haw. 364; *Ward v. I.I.S.N. Co.,* 22 Haw. 488; *Alau v. Everett,* 7 Haw. 82.

The question is not what we might have decided had

we been in the jury box. The question is simply whether there was substantial evidence to sustain the jury verdict. We find that there was. We are not expected to usurp the functions of a jury.

It is conceivable that the jury accepted the value testified to by Mr. Collins on the Castle property of $1.46 per square foot, as conceded to be proper by the State, and applied the methods of Mr. Bolles to that value. Mr. Bolles testified to a value of $1.20 per square foot after applying a 20% increment to his basic value of $1.00 per square foot, because of the frontage character of the land taken. Applying this same 20% increment to the value testified to by Mr. Collins, the jury would have arrived at its verdict of $1.75 per square foot and then applied the same value to all the parcels involved as comparable land as did Mr. Bolles.

If there was any substantial evidence upon which the jury could have based its verdict, this court will not set aside the amount of the condemnation award. *Cf. Steck v. City of Wichita,* 179 Kan. 305, 295 P. 2d 1068.

It is well-settled in this jurisdiction that verdicts based on conflicting evidence will not be set aside where there is more than a scintilla of substantial evidence to support a jury's findings. *Ginoza* v. *Takai Electric Co.,* 40 Haw. 691; *Reynolds* v. *Van Culin,* 36 Haw. 556.

Such is the state of the record before us. Accordingly, the verdict of the jury will not be disturbed.

Affirmed.

*Robert K. Richardson,* Deputy Attorney General (*Shiro Kashiwa,* Attorney General, and *Charles M. Tonaki,* Deputy Attorney General, on the briefs), for appellant.

*J. Garner Anthony* (*Robertson, Castle & Anthony* and *Barry Chung* with him on the brief) for appellees Babbitt, Guard, Castle and Walker.

*Clarence Y. Shimamura* (also on the brief) for appellees Shimamuras.