STATE OF INDIANA *v.* DeEtta Sadlier, Warren M. Atkinson.

[No. 572A242. Filed January 24, 1973.]

*Theodore L. Sendak,* Attorney General, *John T. Carmody,* Deputy Attorney General, for appellant.

*William F. LeMond,* of Indianapolis, for appellee, DeEtta Sadlier .

CASE SUMMERY

BUCHANAN, J.—The State of Indiana appeals from a judgment awarding damages as a result of the condemnation of a parcel of land owned by Mrs. DeEtta Sadlier (Landowner) contending that its experts were erroneously prohibited from testifying to the "after" value of the larger tract from which the condemned parcel was taken.

We affirm.

FACTS

The facts and evidence most favorable to the judgment of the trial court are:

On January 27, 1969, the State filed a Complaint to condemn 7.066 acres of Landowner's land for the purpose of modifying a highway interchange at the intersection of State Road 37 (I-69), 82nd Street, and State Road 100. This 7-acre tract was zoned for commercial use and was irregularly shaped because of the State's need for an access road between Road 100 and 82nd Street. It was located in the northwest corner of the property closer to the interchange than any other part of Landowner's property.

Landowner owned a total of 142 acres, of which 67 acres were described as the plot from which the 7-acre parcel was being condemned.

Included in the land taken was Landowner's residence, a large, old Colonial mansion containing approximately 8,800 square feet of floor space (including unfinished attic and basement).

On February 25, 1969, the court-appointed appraisers filed their report assessing damages to Landowner in the amount of $219,000. Both parties filed exceptions to this appraisal.

Then, on December 10, 1971, Landowner amended her exceptions to the appraisal report by striking all exceptions

to damages to the residue of Landowner's property so that Landowner's exceptions related only to the 7-acre tract.

On the same day, Landowner filed a Motion in Limine and an Order was issued prohibiting evidence relating to damages or benefits to Landowner's residual lands.

At the trial (December 13, 1971) Landowner's appraisal witnesses testified that they had appraised the 7-acre tract which was actually taken by the State as a separate entity, comparing it with sales of similarly sized commercial tracts similarly located. Landowner's witnesses determined the fair market value of the 7-acre tract, including improvements, to be $366,350 and $383,600.

The State's appraisal witnesses disagreed with Landowner's witnesses as to whether the 7 acres was susceptible of being independently valued because of its irregular shape. One of the State's witnesses explained why:

"Q. Will you give us your opinion as an expert appraiser whether in this case it would be feasible to attempt to appraise just the part which has been taken instead of the entire tract?

\* \* \*

A. No, it isn't.

Q. Will you explain why, sir?

A. Prudent buyers and sellers of real estate in the market place normally do not acquire irregular tracts of land in the market place. Since the appraisal is based on the market it isn't possible to attempt to appraise an irregular segment or an irregular tract of land." (Tr. pp. 536-537.)

Other State witnesses made similar statements.

In accordance with their belief of the impropriety of independently evaluating the 7-acre tract, the State's witnesses testified that the proper method of appraising this tract was the "before and after" method. By this method the appraiser first assigns dollar values to the entire tract from which the smaller tract is condemned and to the residue after condemna-

tion, and then by subtraction arrives at the value of the condemned tract (the part taken is thus valued in relationship to the whole).

The State's first appraisal witness explained the "before and after" method to the jury and testified that the "before" value of the 67-acre tract (which the State considered the plot from which the 7-acre tract was condemned) was $528,350. The witness arrived at this figure by first finding a per-acre value of $7,000, based on figures from comparable sales. The witness then assigned the $7,000 per acre figure as the value of the land taken, and appraised the dwelling and 3.3 acres of land at $70,000.

When the witness was asked the value of the 60-acre residue after the taking, Landowner objected, contending that using the actual figures would bring into testimony evidence of benefits and damages to the residue, in contravention of the Motion in Limine. The objection was sustained, but the trial court carefully explained its ruling in these words:

"THE COURT: For the record, now, we have recessed to permit counsel and the Court to give the matter of evidence further consideration and in chambers the Court advised counsel that he would permit the witness to give his opinion and testimony as to the damages which he ascertained by the method of before and after value, having previously testified the method he used, and now advises counsel for the record that the Court will not permit the use of the after value figure. Counsel for the plaintiff has indicated that he wishes to make a motion and perhaps argument for the record and is now given that opportunity.

MR. LeMOND: Your Honor, may I interrupt you? I'm sorry, just a second. I believe it would be advisable to say that they not be allowed to give testimony on the after value figure of the sixty-seven, point, oh, six, six acres.

THE COURT: Alright. That's what the Court intended and I'm glad that you brought it to my attention. The after value figure of the remainder and residue is what the Court meant. Alright. Now, counsel for the plaintiff.

\* \* \*

THE COURT: Alright, counsel, before I rule on your motion, you do understand that I'm not precluding evidence

as to the method used. *I'm only precluding the evidence as to the after value of the remainder and residue.* Do you understand that, sir?" (Emphasis supplied.) (Tr. pp. 496-498.)

After this ruling, the State's first appraisal witness summarized his findings and gave a total evaluation of the 7-acre tract of $103,350. A second witness appraised it at $132,000, and a third State's witness evaluated the land only at $60,601.

At the close of the trial, the jury returned a verdict in favor of Landowner in the amount of $276,650, plus interest, and judgment thereon was entered by the court on January 17, 1972.

From this judgment, the State appeals.

## ISSUES

The questions raised by the State may be divided into three issues:

ISSUE ONE.  Did the trial court erroneously determine that the 7-acre parcel could be independently valued?

ISSUE TWO.  Did the trial court erroneously forbid the State's appraisal witnesses from using the before and after method of evaluation?

ISSUE THREE.  Was the trial court's refusal to allow the State's appraisal witnesses to testify as to the "after" value of the 67-acre tract (out of which the 7-acre tract was condemned) prejudicial error?

As to ISSUE ONE, the State asserts that the 7-acre tract is "of odd configuration" and whether or not such a condemned parcel may be independently valued is a question of fact, not to be determined by the trial court.

Landowner answers that independent valuation in this case was proper, and that in any case the State was allowed to

"put into evidence all of the opinions of its valuation experts to influence a favorable jury verdict for themselves."

As to ISSUE TWO, the State contends that the trial court barred its witnesses from using the before and after method of evaluation, and asserts that that method is the only professionally recognized method of appraisal in cases of a partial taking.

Landowner answers that the before and after method is not proper if damages and benefits to the residue are not an issue.

As to ISSUE THREE, the State argues that the trial court's ruling prejudiced the State's appraisal witnesses' testimony in that they were not allowed to show to the jury all elements of the before and after method in their computation, which method was the only method by which an irregularly shaped parcel could be valued.

Landowner responds that the State has no authority for this position and has shown no prejudice to its case as a result of the trial court's ruling.

## DECISION

ISSUE ONE.

CONCLUSION—It is our opinion that the trial court did not make any determination as to whether or not the 7-acre tract could be independently evaluated.

By way of prologue we comment that the State's position in this appeal faces two obstacles. One is the truth spoken by the record and the second is *State* v. *Furry* (1969), 252 Ind. 486, 250 N.E.2d 590, all as will more fully appear.

The central question in any condemnation action is the determination of the market value of the real estate and improvements condemned. *Territory of Hawaii* v. *Adelmeyer* (1961), 363 P. 2d 979.

Our statute governing measurement of damages in eminent domain proceedings contemplates the same objective:

"They shall determine and report:

"First. The fair market value of each parcel of property sought to be appropriated, and the value of each separate estate or interest therein;

"Second. The fair market value of all improvements pertaining to the realty, if any, on the portion of the real estate to be condemned;

"Third. The damages, if any, to the residue of the land of such owner or owners to be caused by taking out the part sought to be appropriated;

"Fourth. Such other damages, if any, as will result to any persons or corporation from the construction of the improvements in the manner proposed by the plaintiff;

"Fifth. In case the land is sought to be taken by the state or by a county, for a public highway or by a municipal corporation for a public use that confers benefits on any lands of the owner, the report shall also state the benefits which will accrue to each parcel of property, set opposite each description of the same, whether described in the complaint or not. In estimating the damages specified in the foregoing first, second, third and fourth clauses, no deduction shall be made for any benefits that may result from such improvement, excepting in case of a condemnation by the state or by a county, for a public highway or by a municipal corporation for public use, *the benefits, if any assessed, shall be deducted from the amount of damage allowed,* if any, under the foregoing third and fourth clauses; and the difference, if any, plus the damages allowed under the foregoing first and second clauses shall be the amount of the award, but in no case shall the damage awarded be less than the damages allowed under the foregoing first and second clauses. Upon the trial of exceptions to such award by either party a like measure of damages shall be followed. For the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of the service of the notice provided in section three [32-11-1-3], and its actual value, at that date, shall be the measure of compensation for all property to be actually taken and the basis of damages to property not actually taken but injuriously affected, except as to the damages stated in the fourth clause hereof." IC 1971, 32-

11-1-6, Ind. Ann. Stat. § 3-1706 (Burns Code Ed.) (Emphasis supplied.)  (The Statute herein.)

The State insists that the 7-acre tract is oddly shaped and is not susceptible of being valued as a separate, distinct parcel. And further—even if it can be separately valued as a separate and distinct parcel, such a determination may be made only by the jury and not by the trial court.

The question of whether a partial taking can be separately valued as a distinct parcel may well be a question of fact for the jury's decision only. *Territory of Hawaii* v. *Adelmeyer, supra,* seems to support that principle.  Without accepting or rejecting this proposition as a precedent in Indiana,[1] we nevertheless find no error in the conduct of the trial court because the State shows us no statement or action by the trial court which could demonstrate that the trial court determined or ruled that the 7-acre tract could or could not be independently valued.

The State through its witnesses testified that the 7-acre parcel could not be properly evaluated as a separate parcel and no objection by Landowner or adverse ruling by the trial court interfered with such testimony.  The State gave its testimony as to the proper resolution of this so-called question of fact, "subject only to the inherent risk of non-persuasion."[2]

The record negates any suspicion that the trial court directly or indirectly determined the question of fact whether the 7-acre tract was of such a size and shape that it was susceptible of being separately and distinctly valued as a parcel.  The trial court precluded no evidence on this question or any other evidence relating to value other than the "after" value of the larger 67-acre tract.

1. Compare *Pittsburgh, Cincinnati, Chicago & St. Louis R. Co.* v. *Crockett* (1914), 182 Ind. 490, 106 N.E. 875.
2. *Territory of Hawaii* v. *Adelmeyer, supra.*

Furthermore, there is nothing in the Statute which indicates a condemned parcel may only be separately evaluated if it is of a particular size or shape.

ISSUE TWO.

CONCLUSION—It is our opinion that the trial court did not bar the State from using the before and after method of evaluation in arriving at its opinion of the fair market value of the 7-acre tract.

Again the State is at war with the record. The trial court did allow the State to use the before and after method in arriving at the market value of the 7-acre tract as determined by its experts. The learned trial judge repeatedly declared that he would (and did) permit the State's witnesses to testify as to the damages ascertained by the before and after method. The State's witnesses so testified specifically. They used "comparables" of large tracts sold in the area as the basis for their ultimate valuation of the smaller 7-acre tract.

ISSUE THREE.

CONCLUSION—It is our opinion that the trial court's refusal to allow the State's appraisal witnesses to testify to the "after" value of the 67-acre tract used in computing their final damages as a result of condemnation was not prejudicial error.

And now to the State's quarrel with *State* v. *Furry, supra.*

The essence of the State's position is that because the 7-acre tract condemned is of odd configuration such a tract can only be valued by the before and after method, which necessarily requires statements of value of the larger tract from which it is carved before and *after* the taking. The State puts it this way:

"When only a portion of a tract is condemned the value of that portion condemned must be computed as a portion of the larger parcel through before and after value unless the portion condemned is of such a size and shape that

it is susceptible to being valued as a separate and distinct parcel." (Page 34, State's Brief.)

What the State won't face up to is that when Landowner amended her exceptions to the original appraisal omitting exceptions for damages to the residue (the 67-acre tract), consideration of damages was then limited to the first and second elements found in the Statute (the fair market value of the land condemned and improvements). *State* v. *Furry, supra. Furry* holds that if damages to the residue are not an issue in the trial, benefits to the residue may not be introduced into evidence. So by seeking to solicit testimony as to the after value of the larger 67-acre tract the State is on a collision course with *Furry*.

As Landowner aptly observed, testimony of the after value of the larger tract "would necessarily involve inquiry into damages and benefits to the residue * * *."

Much the same situation occurred in *Furry*, where prior to trial any claim for damages to the residue of the land was withdrawn. The Supreme Court concluded that:

> "When no claim is made for these classes of damages [those relating to damages to the residual land], *the State has no right to introduce evidence of the value of any benefits under clause five of the above statute. We see no unfair effect upon the State by the resulting foreclosure of the State's right to offer benefit testimony to offset third and fourth clause damages."* (Emphasis supplied.)

The same conclusion is reached in *Territory of Hawaii* v. *Adelmeyer, supra,* on which case the State mistakenly relies. The State appealed from a judgment awarding damages for a partial taking and the Territory of Hawaii's main contention was that the trial court should have limited the appraisal witnesses to the before and after method of valuation—a contention the Supreme Court of Hawaii rejected:

> "Finally, in partial taking cases, no rigid rules can be prescribed. The facts and circumstances of each case must be considered to determine the applicable formula."

Recognizing that no inflexible formula can be used in cases of partial taking, the court went on to point out why:

"Most of the partial taking cases applying the method of valuing the part taken in relation to the entire tract are those involving strips of land which had no real economic or market value standing alone. But where the part taken has an independent economic use with a market value and commanded a higher value as a separate entity, such value has been allowed. Lazenby v. Arkansas State Highway Commisison, Ark., 331 S. W. 2d 705; Wishek Investment Co. v. McIntosh County, supra."

None of the cases coming to our attention make any distinction as to the size or the shape of the partially taken tract.

In discussing the size of comparable tracts used to prove fair market value, Justice DeBruler in *Furry* recognized that "No two tracts of land are identical." (P. 491.) He was speaking of size; the same rationale would seem to apply equally to shape.

So the State has not been harmed. Had the *Furry* case never been decided, our conclusion would be the same. The trial court allowed the State's appraisal witnesses *to use and explain* the before and after method to the jury. They were not barred from giving the final conclusion arrived at by such method, but only from testifying to one of the preliminary figures used in their calculations.

In effect, the State has speculated that the testimony of its expert witnesses was not as impressive as it might have been had they been allowed to use an intermediate figure (the "after" value of the 67-acre tract) in arriving at their final figure as to the fair market value of the 7-acre tract, *i.e.*, the condemned tract. Even were the court's ruling considered to be error, the substantial rights of the State were not affected in the presentation of its case to the jury. Rule TR. 61.

The State is unable to hurdle the obstacles of *Furry*, reason, and the record.

The judgment of the trial court is hereby affirmed.

Sullivan, P.J. and White, J., concur.

