320 So.2d 480 (1975)
HOME OWNERS OF WINTER HAVEN, INC., Appellant,
v.
POLK COUNTY, a Political Subdivision of the State of Florida, Appellee.
No. 74-34.
District Court of Appeal of Florida, Second District.
October 24, 1975.
*481 Bernard B. Weksler of Aronovitz & Weksler, Miami, for appellant.
Barbara Dell McPherson and Geoffrey B. Dobson, Dept. of Transportation, Tallahassee, for appellee.
PER CURIAM.
Appellant (landowner) appeals from an assertedly inadequate jury award in a condemnation proceeding under which Polk County (County), in widening two roadways which intersected in front of the landowner's shopping center, consisting of 25.72 acres, in Winter Haven, took one strip of land 12.75 by 829.7 feet along State Road No. 544 (Avenue T N.W.) and another strip of land 17 by 652.6 feet along State Road No. 555 (U.S. Hwy 17) consisting of 0.505 acres which abutted the existing right of way as well as a three-year construction easement over an additional area.
After careful consideration of the record, briefs, and oral argument, we have concluded that the amount of the verdict was within the limits of properly admissible expert testimony of the value of the property; and, reversible error not having been demonstrated, we affirm.
The testimony revealed that appellant had purchased the property taken in fee, which constituted the then-existing highway frontage, at an average price of $1.80 per square foot a few years before the taking. Primarily basing his opinion upon the value of the property independently of the parent tract, that is, without reference to the fact that after the taking the landowner would still own the shopping center with virtually the same frontage on the same roadways, the landowner's expert, Carl Lake, evaluated the property in question at the time of taking at $57,300, or $3.70 a square foot. Polk County's expert, John Causey, on the other hand, did consider the property not merely as "bulk land" in its location as highway frontage, but, rather, in relation to its value as part of the larger parcel which retained its frontage subsequent to the taking. In so doing, he evaluated the property at 97¢ a square foot, or $20,000. The jury verdict for the land taken was $27,496.25, or $1.25 a square foot, which was more than the County's expert's opinion, but less even than the price paid for the property in question some time before. The landowner's primary point here complains of the inadequacy of the award, contending that Causey's testimony, which was the only evidence which might sustain it, was based upon erroneous theories of value. We hold otherwise. Causey's consideration of, as he said, "... [not] just the strip that is being taken ... [but, rather,] the entire parent tract ... the entire ownership  and ... what effect the loss of this strip will have on the market value of the remaining ownership or the remaining parent tract ..." was entirely appropriate for admission into evidence, and entirely proper for jury consideration as to the valuation of the parcels involved in this case.
The books are filled with arguments on each side of the question of whether, under varying circumstances, property valuation must be made, as it were, in bulk, without regard to the remaining tract, or whether one may consider  as did Mr. Causey and, obviously, the jury  the effect of its loss upon the landowner's remaining property.[1] See 4A, Nichols *482 on Eminent Domain, §§ 14.231, 14.31[1], and cases collected. We think that whatever the result in other situations, the use of Causey's method, denominated the "slide back" theory in City of Los Angeles v. Allen, 1 Cal.2d 572, 36 P.2d 611 (1934). City of Fresno v. Cloud, 26 Cal. App.3d 113, 102 Cal. Rptr. 874, 879-881 (1972), is particularly pertinent, and certainly admissible in a case such as this one which involves a strip taking of highway frontage of a large parcel which possesses the same characteristics and may be just as valuable after as before the condemnation. Frenel v. Commonwealth of Kentucky Department of Highways, Ky. 1962, 361 S.W.2d 280, and cases cited; In re Fourth Avenue in City of New York, 255 N.Y. 25, 173 N.E. 910 (1930). As the court observed in Territory of Hawaii v. Adelmeyer, 45 Hawaii 144, 363 P.2d 979, 985-986 (1961):
Most of the partial taking cases applying the method of valuing the part taken in relation to the entire tract are those involving [as in this case] strips of land which had no real economic or market value standing alone... .
It seems clear to us, contrary to the appellant's contention, that the experts, and the jury, are not required to conclude that the "value" for eminent domain purposes of an independently unusable strip of road frontage is even equal to, much less greater than, the amount a landowner who does not have it is willing to pay to get it. Since the verdict was thus adequately supported by expert testimony the jury was entitled to consider, its amount forms no basis for reversal. Meyers v. City of Daytona Beach, 158 Fla. 859, 30 So.2d 354 (1947); Sallas v. State Road Department, Fla.App.1st 1969, 220 So.2d 378; Territory of Hawaii v. Adelmeyer, supra.
The landowner strongly argues that this cause must be reversed and remanded for a new trial because of the prejudicial and improper remarks of the attorney for the County, made during the course of his final argument to the jury. We disagree. The complained-of remarks, hereinafter set out, are:
... I asked the question. I said, "We are talking about May 6, 1970. This is the date of the valuation. We are not talking about what may happen in the future. I am asking as of that date did that diminish the value of that land?"
Mr. Ulrey's [a representative of the landowner] answer was, "By the extent that you take anything from anything it does diminish it. If you took an inch off your finger it diminishes the value of your hand. I don't know how to answer your question."
Now, that may seem insignificant as to the value of the property, but it was an example that Mr. Ulrey used, that of course if you take an inch off your finger it's going to hurt you. Now, I can agree with that, but it made me think of an example that maybe the situation is rather than my taking a finger off of someone it would hurt that person, is if we have got a large individual such as this corporation in Miami, maybe it's gotten a little fat.
MR. WEKSLER: [landowner's attorney] Your Honor, I object to that.
MR. CARR: [condemnor's attorney] If we take a few inches off of that front it might make it look a little better.
MR. WEKSLER: Your Honor, I object to that type of approach in a case of this nature. I don't think that's a proper argument.
THE COURT: I will overrule your objection... .
The landowner's attorney strongly contends the argument was calculated to and did combine two impermissible and inflammatory references, one to the wealth and financial status of the landowner, and the other contained a sectional appeal.
*483 The testimony of Mr. Ulrey, who testified in behalf of the landowner, discloses that he is attorney and property manager for Food Fair Stores, Inc., in Florida, South Carolina, North Carolina, Georgia and Alabama; that the landowner was a wholly owned subsidiary of Food Fair Stores; that in excess of $1,000,000 had been expended in acquisition of the property and the improvements made thereon; that Food Fair Stores, Inc. owns J.M. Fields and the latter corporation had a store in the shopping center as did Food Fair Stores, Inc., under the name of Quality Discount Store. Under such factual circumstances it is difficult for us to conclude that the jury can be said to be prejudiced against the property owner when the attorney for the County in his argument said "... we have got a large individual such as this corporation in Miami, maybe it's gotten a little fat... . If we take a few inches off of that front it might make it look a little better." We point out this is the only remark, reference, or comment in the entire record of this nature made by the county attorney. As shown above, the jury surely had substantial competent evidence presented to it from which to reasonably infer that the landowner was a large corporation, without being told that by the county attorney. We seriously question whether this case would now be before this court had the trial court either sustained the timely objection made by attorney for the landowner or admonished the jury to disregard the remark. Although the remark was, in fact, plainly improper, the ultimate question is: Does the fact that the trial court failed to do so constitute reversible error requiring a new trial. We hold it does not.
The landowner further contends that the trial court erred in excluding testimony proffered by the landowner of three comparative sales which occurred after March 20, 1970, the date the declaration of taking was filed in this case. Such testimony is "peculiarly a matter for the discretion of the trial court." Jayson v. United States, (5th Cir.1961), 294 F.2d 808, 810. After reading the proffered testimony as to the later sales, which the landowner attempted to introduce into evidence, we hold that the judgment of the trial court excluding testimony of such subsequent sales was within the trial court's discretion. The record shows that one of said sales was consummated by deed dated May 10, 1971, and involved another parcel of land that is in this taking. The other sales took place on January 7, 1972 and July 17, 1973.
The landowner's final point challenges the trial court's allowance, in ruling on its motion to tax costs, of only $1,000 of the $2,250 bill submitted by Lake for his expert services. We find no error or abuse of discretion has been made to appear by the record before us.
For the reasons set forth above, the judgment of the trial court is
Affirmed.
HOBSON, Acting C.J., BOARDMAN, J., and SCHWARTZ, ALAN R., Associate Judge, concur.
NOTES
[1] It must be emphasized that this issue concerns only the value of the property being condemned and not the separate question  which was indeed separately considered and evaluated in the verdict in this very case  of the severance damages caused to the landowner's remaining property by the partial taking itself.