**NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-23-0000718
17-FEB-2026
11:59 AM
Dkt. 81 SO**

NOS. CAAP-23-0000718 and CAAP-23-0000724
(consolidated)


IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


COUNTY OF KAUAʻI, Plaintiff-Appellee, v.
B & D PROPERTIES, LLC, dba NORTH DAKOTA HOLDINGS,
Defendant-Appellant, and
JOHN DOES 1-25; JANE DOES 1-25; DOE PARTNERSHIPS 1-25;
DOE CORPORATIONS 1-25; DOE ENTITIES 1-25; and
DOE GOVERNMENTAL UNITS 1-25, Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 5CCV-22-0000013)


MEMORANDUM OPINION
(By: Leonard, Presiding Judge, Wadsworth and Guidry, JJ.)

In this consolidated appeal in an eminent domain case,

Defendant-Appellant B & D Properties, LLC dba North Dakota

Holdings (**B&D**) appeals from the December 11, 2023 Final Judgment

(**Judgment**) entered by the Circuit Court of the Fifth Circuit

(**Circuit Court**).[1]  B&D also challenges the Circuit Court's

November 9, 2023 Findings of Fact, Conclusions of Law, Order and

Preliminary Judgment (**FOFs/COLs & Order**).  B&D contends the

Circuit Court erred in its valuation of the subject property

(**Property**).  For the reasons discussed below, we vacate the

Judgment and FOFs/COLs & Order.

---

[1]    The Honorable Kathleen N.A. Watanabe presided.

I.    BACKGROUND

The Property is an approximately 23.5 acre vacant parcel located in Kīlauea, Kauaʻi County.  It is currently zoned for agriculture and the State's land use designation is also agricultural, but it has been identified in the Kauaʻi County General Plan and the Kīlauea Town Plan for future urban expansion.

In September 2019, Adam Roversi (**Roversi**), then newly-appointed Director of the Kauaʻi County Housing Agency, saw a billboard advertising the Property for sale, indicating it "was zoned commercial in part and residential in part, which Roversi knew to be false."  Roversi called the number and spoke with Leland Bertsch (**Bertsch**), B&D's managing director, who admitted the Property was not zoned for commercial or residential use and declined to provide a purchase price.  In November 2019, Plaintiff-Appellee County of Kauaʻi (**County**) contracted with CBRE to provide a "restricted appraisal" of the Property to see if the County could purchase it.  Nathan Alexander (**Alexander**) conducted the appraisal in which he, among other things: recognized the Property was "designated for future development in the Kauai General Plan and Kilauea Town Plan;" "analyzed the probabilities," time, and cost of changing the land use and zoning status from agriculture; noted that the Property lacked sufficient water and roadway access to support increased density;[2] and thus determined "a potential buyer would not want to pay for the enhanced value that would result from entitlement

---

[2]     It appears that at least the roadway access concern was resolved in May of 2021, when the County accepted dedication of a road extension that provides access to the Property.

changes which had not yet been realized."  Alexander concluded the Property was worth $3,270,000 as of October 2019, based on the highest and best use of the Property as being subdivided into agricultural estate lots (**Agricultural Lots**).  The County later requested a full appraisal, which Alexander provided in January 2021, in which he employed the same analysis and determined the Property was worth $3,835,000 as of September 2020.  Roversi presented the $3,835,000 figure to Bertsch, who rejected it as "offensive."

At an August 18, 2021 Kauaʻi County Council Meeting, Councilmember KipuKai Kualiʻi moved for passing of Resolution No. 2021-27 (**Resolution**), "authorizing the acquisition of land for public use, to wit, the [Property], and determining and declaring the necessity of the acquisition thereof by eminent domain."  Roversi provided the council an "overview" of the Resolution, representing that the "Housing Agency's intention in seeking acquisition of [the Property] is to develop affordable housing both for rent and sale," that he and Bertsch have "been unable to come to an agreement on the purchase price," and the "eminent domain proceeding simply provides a vehicle" to acquire the Property "with the court involved in deciding what a fair purchase price would be."  The Resolution passed unanimously on October 6, 2021.

On March 23, 2022, the County filed the underlying complaint against B&D for condemnation of the Property, alleging, among other things, that "[t]he acquisition of [the Property] is necessary for a public use, to wit: the development of workforce housing and related public infrastructure."  The case proceeded

to a bench trial. As a trial exhibit, the County provided an updated appraisal (**County Trial Appraisal**) in which Alexander "conducted the same analysis" as the prior appraisal, brought it "current by accounting for increases in the market generally and analysis of new comparable properties," and valued the Property at $4,470,000. As stated in the FOFs/COLs & Order, Alexander determined that the highest and best use of the Property was to be subdivided into Agricultural Lots.

B&D's expert witness, Curtis Bedwell (**Bedwell**), provided an appraisal valuing the Property at $22,500,000 (**B&D Trial Appraisal**). The Circuit Court found that in reaching this value, Bedwell determined that there was no risk that the entitlements necessary for residential development would be obtained. Accordingly, Bedwell concluded that the Property was worth $23,000,000 less "a discount of $500,000 to account for the estimated cost to obtain the entitlements necessary for residential development." Bedwell had previously appraised the Property for Bertsch in 2017, for purposes of obtaining financing (**Financing Appraisal**). At that time, he had concluded the "as-is" value of the Property was $4,210,000, and that as of October 2022, the "prospective value with the assumption of having altered the land use and zoning would be $8,110,000." In the Financing Appraisal, Bedwell "applied various discounts to his land sales comparison analysis to account for the uncertainty of obtaining changes in the Subject entitlements," but he did not apply such discounts in the B&D Trial Appraisal.

Following an October 2023 bench trial, the Circuit Court adopted the County's valuation of $4,470,000 as just

4

compensation for the Property. The Circuit Court found "Alexander to be credible based on his reports and his responses to questions on direct and cross examination, as well as his demeanor in court." The Circuit Court found that "Bedwell's testimony lacks credibility, and his valuation appraisal conclusions are unreliable and misleading," particularly because Bedwell valued the Property as if it were upzoned, but he did not clarify that upzoning was a hypothetical condition.

B&D appealed from the FOF/COL & Order, creating CAAP-23-718. B&D also appealed from the Judgment, creating CAAP-23-724. The appeals were consolidated under CAAP-23-718.

## II. POINTS OF ERROR

B&D raises five points of error on appeal, contending that the Circuit Court erred by: (1) failing to make an independent determination of the highest and best use of the Property; (2) failing to consider and determine whether it was reasonably probable the Property could be upzoned to a higher and more valuable use; (3) failing to consider the evidence which overwhelmingly showed it is reasonably probable the Property may be upzoned to a higher and more valuable use for residential development; (4) failing to make a determination of the Property's fair value as of the date of summons; and (5) basing its $4,470,000 award of just compensation on comparisons to sales of other agriculturally-zoned properties, which do not represent the Property's highest and best use.

## III. APPLICABLE STANDARDS OF REVIEW

A trial court's FOFs are reviewed under the clearly erroneous standard. Gordon v. Maesaka-Hirata, 143 Hawaiʻi 335,

5

346, 431 P.3d 708, 719 (2018), <u>overruled on other grounds by Eason v. State</u>, 157 Hawai'i 252, 576 P.3d 765 (2025).  "A finding of fact is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction in reviewing the entire evidence that a mistake has been committed."  <u>Id.</u>  The appellate court reviews the trial court's COLs *de novo*.  <u>Bhakta v. Cnty. of Maui</u>, 109 Hawai'i 198, 208, 124 P.3d 943, 953 (2005).  A COL that is supported by the trial court's FOFs and that reflects an application of the correct rule of law will not be overturned.  <u>Id.</u>

> In an eminent domain trial,

> > any competent evidence of matters, not merely speculative, which would be considered by a prospective vendor or purchaser or which tend to enhance or depreciate the value of the property taken is admissible.  The only question, then, is one of competence of the witnesses and their testimony.  If there is then a conflict as to the highest and best use of the property, the question is properly one left to the jury.  Thus, the proffered uses that should be excluded from jury consideration are those that are illegal, illogical, physically or financially unfeasible, or otherwise so remote or improbable as to not figure materially in the considerations of the hypothetical willing buyer and seller.

<u>City & Cnty. of Honolulu v. Victoria Ward, Ltd.</u>, 153 Hawai'i 462, 488, 541 P.3d 1225, 1251 (2023) (cleaned up).

IV.  DISCUSSION

B&D first argues that the Circuit Court clearly erred by failing to independently determine the highest and best use of the Property.  The Hawai'i Supreme Court has explained:

> Eminent domain proceedings are intended to award landowners an amount of just compensation which as nearly as possible approximates the value which a free market would attach to the taken property.  A standard valuation method in eminent domain cases calculates just compensation as the difference between the fair market value of condemned property immediately before the taking (*i.e.*, the condition unaffected by the taking) and the fair market value of the remaining property after the taking.  The fair market value of the property in both the before and after conditions is calculated by estimating the highest and best use, defined as the use of property that will generate the most profit.

6

> The highest and best use of a property is the one that is physically possible, legally permissible, financially feasible, and maximally productive.

Id. at 485-86, 541 P.3d at 1248-49 (cleaned up).

The supreme court has repeatedly clarified that "highest and best use need not be the use at the time of taking or even the zoning at the time of taking" and that it may be established through testimony and studies regarding the feasibility of prospective future uses. Id. at 488, 541 P.3d at 1251 (cleaned up).

Here, the Circuit Court's findings and conclusions were based on Alexander's determination that the highest and best use of the Property *as currently designated* was for Agricultural Lots. As the County argues, a trial court need not provide a detailed itemization of its analysis regarding highest and best use. However, there is nothing in the Circuit Court's findings to indicate that it considered any use of the Property other than for Agricultural Lots, notwithstanding ample evidence that it was likely that the Property would be developed for, *inter alia*, residential housing. Although a factfinder may properly consider such evidence and determine that a use is not reasonably probable, here, there is no indication that the Circuit Court did so. Rather, the Circuit Court found Alexander's opinion to be supported and credible, and adopted his "as-is" value. Accordingly, it appears that B&D's argument has merit insomuch as the Circuit Court did not determine that the as-currently-designated value was the highest and best use of the Property.

7

Points of Error (**POEs**) 2, 3, and 5 raise issues related to and overlapping with B&D's arguments concerning highest and best use.

In POE 2, B&D argues as follows. Hawaii Revised Statues (**HRS**) § 466K-4(a) (2013) requires Hawaiʻi real property appraisers to comply with the Uniform Standards of Professional Appraisal Practice (**USPAP**), and USPAP Standards Rule 1-3 requires an appraiser to identify and analyze the effect on use and value of "existing land use regulations" and "reasonably probable modifications of such land use regulations." Under Hawaiʻi case law, a condemnation valuation must consider potential uses of the property and whether it is reasonably probable the subject property could be rezoned to a higher and more valuable use. See Victoria Ward, 153 Hawaiʻi at 486, 541 P.3d at 1249; see also, e.g., Hawaii Cnty. v. Sotomura, 55 Haw. 176, 185, 517 P.2d 57, 64 (1973). Alexander's valuation did not comply with USPAP Standards Rule 1-3 or relevant Hawaiʻi cases, and the Circuit Court erred by failing to independently determine whether it was reasonably probable the Property could be upzoned.

In POE 3, B&D argues that the evidence presented at trial overwhelming supported that the highest and best use of the Property was as residential development. For example, the 2000 Kauaʻi General Plan called to expand Kīlauea Town for additional "residential community," including the Property. In addition, Kauaʻi County Planning Director Kaʻaina Hull testified the Property would "most likely" be upgraded to a mix of commercial and residential zoning. The 2006 Kīlauea Town Plan designates the Property for residential use. Bertsch had commissioned a

8

conceptual plan to develop the Property for residential housing. Roversi testified the County wanted to condemn the Property "to develop affordable housing both for rent and for sale." The Resolution stated the public purpose supporting eminent domain was "the development of workforce housing and related public infrastructure." Thus, the evidence demonstrated it was "highly probable" the Property would be reclassified and rezoned.

Regarding POE 5, which challenges the Circuit Court's consideration of "comparable sales" of agricultural properties, B&D points to cases in other jurisdictions that have reversed awards of just compensation that were based on comparisons to sales that do not reflect the correct highest and best use. Alexander admitted the agricultural lots he selected as comparisons could not be upzoned for residential or commercial development, could not be subdivided into smaller lots for development, were limited to the agricultural use stated in the condominium property regime's governing documents, were not located adjacent to an existing town, and were not designated for urban expansion and residential development.

In Hawaiʻi condemnation proceedings, the question of a property's market value "is not limited to the value for the use to which the land is actually devoted, but it may have a potential use value." State v. Dillingham Corp., 60 Haw. 393, 406, 591 P.2d 1049, 1057 (1979) (citation omitted).

> "[C]ompensation must be estimated as the fair market value [(**FMV**)] of the property at the time of the taking[.] This market value is not to be ascertained by what the property would bring at a forced sale, but by what it would fairly bring for any purpose if the owners themselves, without pressure, should offer it for sale."

Hous. Fin. & Dev. Corp. v. Harold K.L. Castle Found., 79 Hawaiʻi

321, 327, 901 P.2d 1300, 1306 (App. 1995) (quoting <u>United States v. Thurston</u>, 4 U.S. Dist. Ct. Haw. 16, 20–21 (1912)).

"In determining potential use value, 'any competent evidence of matters, not merely speculative, which would be considered by a prospective vendor or purchaser or which tend to enhance or depreciate the value of the property is admissible.'" <u>City & Cnty. of Honolulu v. Market Place, Ltd.</u>, 55 Haw. 226, 242, 517 P.2d 7, 19 (1973) (cleaned up).

> Just compensation includes all elements of value that inhere in the property, but it does not exceed market value fairly determined.  The sum required to be paid the owner does not depend upon the uses to which he has devoted his land but is to be arrived at upon just consideration of all the uses for which it is suitable.  The highest and most profitable use for which the property is **adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value** while the property is privately held.

<u>Sotomura</u>, 55 Haw. at 185, 517 P.2d at 63-64 (emphasis added).  As discussed above, "the highest and best use [is] defined as the use of property 'that will generate the most profit.'"  <u>Victoria Ward, Ltd.</u>, 153 Hawaiʻi at 486, 541 P.3d at 1249 (citation omitted).  That said, the supreme court has held:

> Evidence of other transactions to aid the trier of fact in determining value is generally admitted where they are sufficiently near in time, the purportedly comparable tracts are located sufficiently near the land to be valued, and these tracts and the subject property are sufficiently alike in character, situation, usability, and improvements.  At first blush, a transaction three years removed from the condemnation hardly appears close enough for comparison purposes. **Yet where there was an apparent paucity of comparable sales**, the allowance of a discussion of a transaction occurring several years after the subject property's condemnation was not necessarily an abuse of discretion, **particularly where the jury was apprised of the circumstances** and the appraiser took market trends into account.  We do not find the trial court's action in this regard constituted error; **the possible untimeliness of the transaction was a matter affecting the weight of such evidence rather than its admissibility.**

10

State v. Pioneer Mill Co., 64 Haw. 168, 174-75, 637 P.2d 1131, 1136-37 (1981) (citation and footnote omitted; emphases added).

Thus, notwithstanding that a court's ultimate determination of fair market value must be based on a property's highest and best use, as discussed above, we conclude that the Circuit Court did not abuse its discretion in considering agricultural property sales, as the issue is one of weight, not admissibility.

Finally, in POE 4, B&D argues that the Circuit Court failed to determine the Property's fair market value as of the date of summons. However, B&D does not identify where in the record it objected to the County's valuation on the basis that it did not represent the Property's fair market value as of the date of service of the summons.[3] Therefore, the argument is waived for the purpose of this appellate review. See Ass'n of Apt. Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawaiʻi 97, 107, 58 P.3d 608, 618 (2002) ("Legal issues not raised in the trial court are ordinarily deemed waived on appeal.").

In sum, nothing in the Circuit Court's findings indicates that it independently considered any use of the Property other than for Agricultural Lots, notwithstanding the ample evidence that the Property would likely be developed for, inter alia, residential housing. Although a factfinder may properly consider such evidence and determine that a use is not

---

[3] In its proposed FOFs & COLs, B&D included: "14. HRS § 101-24 provides in relevant part that '[f]or the purpose of assessing compensation and damages, the right thereto shall be deemed to have accrued at the date of summons[.]' See Haw. Rev. Stat. Ann. § 101-24." However, B&D does not point to any argument to the Circuit Court on this issue and the inclusion of proposed COL 14 was not sufficient to apprise the Circuit Court that B&D objected to the County's proposed valuation on the basis that it did not represent the Property's value as of the date of service of the summons.

reasonably probable, here, there is no indication that the Circuit Court did so. Rather, it merely found Alexander's opinion of the Property as "currently designated" to be credible, and adopted his as-is market value. Particularly in light of the fact that the County specifically sought to condemn the Property for the express purpose of residential development and related public infrastructure, consistent with the Kauaʻi General Plan and the Kīlauea Town Plan, we conclude that the Circuit Court clearly erred in adopting Alexander's agricultural use valuation, without regard to the Property's highest and best use, in determining the fair market value of the Property.

For these reasons, the Circuit Court's December 11, 2023 Judgment is vacated and this case is remanded to the Circuit Court for a new trial.

DATED: Honolulu, Hawaiʻi, February 17, 2026.

On the briefs:

Bruce D. Voss,
Ciarra B. Sapigao,
(Lung Rose Voss & Wagnild),
for Defendant-Appellant.

Matthew M. Bracken,
County Attorney,
County of Kauai

and

David J. Minkin,
Brett R. Tobin,
Sara M. Hayden,
(McCorriston Miller Mukai
MacKinnon LLP),
for Plaintiff-Appellee.

/s/ Katherine G. Leonard
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge